Bruce R. Babcock - State Bar #85878
4808 Santa Monica Ave.
San Diego, CA 92107

(619) 222-2661

Attorney for Debtors

## UNITED STATES BANRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: | CASE NO:  09-19516-PB13 |
| WILLIAM SETH HILL and KATHLEEN HILL, | MOTION FOR VALUATION OF DEBTORS' RESIDENCE AND AVOIDANCE OF TRUST DEED LIEN AGAINST SAID RESIDENCE, WITH MEMORANDUM OF POINTS AND AUTHORITIES |
| Debtors | |
| -------------------------- | 11 U.S.C.§§506 & 1322 |

DATE: September 28, 2010
TIME: 11:00 A.M.
DEPT: 1

TO THE HONORABLE UNTIED STATES BANKRUPTCY JUDGE, CHAPTER 13 TRUSTEE AND ALL INTERESTED PARTIES:

Debtors William and Kathleen Hill hereby move this Court to value their primary residence real property located at 762 Taft Ave., El Cajon, CA 92020, hereinafter sometimes referred to as "Debtors' residence", at $252,000 or less and to either (1) allow Debtors to avoid the 2nd trust deed lien against said Residence held by CIT/Vericrest Financial, Inc. under their Chapter 13 Plan pursuant to 11 USC §506 and 11 USC §1322(b) and other applicable authority to or, in the alternative, (2) to determine that said lien is void pursuant to 11 USC §506(a) and (b) and other applicable authority.

This motion is based upon this Motion, the Memorandum of Points and Authorities incorporated herein, the Declaration of Joint Debtor Kathleen Hill filed herewith, the Declaration of Bruce R. Babcock filed herewith, all documents filed in this Bankruptcy case, and upon all such oral and documentary evidence, points and authorities as may be properly presented or filed in support hereof.

## MEMORANDUM OF POINTS AND AUTHORITIES
## FACTUAL BACKGROUND

1. Prior to 2009 neither Debtor nor Joint Debtor had never been a debtor in a bankruptcy proceeding. On 9/16/09 Debtors filed case # 09-13933-PB7 in this Court and duly received a discharge of all their dischargeable debts on 12/16/09. One of the debts scheduled and discharged in said proceeding was the subject loan from CIT/Vericrest Financial, Inc. in the approximate amount of $77,000 ostensibly secured by a 2nd trust deed against Debtors' home at 762 Taft Ave., El Cajon, California, hereinafter sometimes referred to as the "subject lien".

2. On 12/21/09, after receipt of their 12/16/09 discharge in their chapter 7, Debtors filed this Chapter 13 case and listed on Schedule A of their Schedules herein their sole residence, being a single family residence real property located at 762 Taft Ave., El Cajon, California 92020 referenced above as Debtors' residence. Said Schedule A reflected the market value of said residence at $300,000. On Schedule D of said Schedules Debtors indicated that as of the 12/21/09 case filing date said residence was encumbered by a 1st trust deed lien in favor or Everhome Mortgage in an amount of $369,000. On 1/13/10 said Everhome filed a Proof of Claim herein claiming $369,121 due as of the 12/21/09 Petition date. On said Schedule D Debtors also listed CIT/Vericrest Financial, Inc. as a claimant with a lien against Debtors' residence and indicated that as of the12/21/09 Petition date there was no debt owed to such creditor, either secured or unsecured, and that such claimant held a "lien on property only – no debt". A copy of said Schedule D is attached as Exhibit A to the Declaration of Joint Debtor Kathleen Hill filed herewith. Said schedule D also reflects a claim to the S.D. County Tax Collector for $1,565 secured by a lien against Debtors' residence and a claim to Monarch Grand Vacation H.O.A. for $650 secured by a lien against Debtors' time share. On Schedule E of their Schedules herein Debtors list no priority claimants. On Schedule F of their Schedules herein Debtors list three unsecured claimants: Citibank in the amount of $36,109 for student loans, Adele Harmeling for credit advanced of $800 and Mr. Jackson Witte for credit advanced of $2,300.

3. On May 5, 2010 a meeting of creditors pursuant to B.K. Code §341(a) was held. Both Debtors and their counsel were present, no creditors appeared and Trustee David Skelton held and concluded such meeting on such date.

## JURISDICTION, VENUE AND APPLICATION

4. This Court has jurisdiction to entertain and grant this Motion pursuant to 28 USC §1334 in that this proceeding arises from and is related to the above-captioned bankruptcy proceeding under Title 11 of the U.S. Code. This Court has personal jurisdiction to hear this case pursuant to 28 USC §1334 and has subject matter jurisdiction pursuant to 28 USC §157(b)(2). This Court also has jurisdiction pursuant to 28 USC §1331 due to the federal subject matter covered by 11 USC §§ 506, 1322 and/or 1327. Venue is in this district pursuant to 11 USC §1391(b). This is a core proceeding under the U.S. Bankruptcy Code.

5. The facts and arguments set forth herein are for purposes of this motion only and are submitted without prejudice to any future claims and/or defenses Debtors may discover and bring as further facts develop or are discovered, proofs of claims are reviewed, further investigation takes place and/or additional authorities are created or are discovered.

## ARGUMENT

6. When a home loan is obtained the lender receives two distinct rights – the right to collect the unpaid debt from the borrower, known as the borrower's "in personam" liability or "debt" and the right to seek recovery of the loan from the securing property itself, known as the "in rem" liability, or "secured lien". When such a borrower files bankruptcy said lender has two potential portions to their claim – an in personam/debt portion allowing the lender to seek repayment from the borrower and an in rem/secured lien portion of their claim allowing the lender to maintain a secured interest in the subject property and to seek repayment by foreclosing such secured interest.

7. Federal Rule of Bankruptcy Procedure 3012 provides that "The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the

secured claim and any other entity as the Court may direct.".  This Court has jurisdiction to determine the value of the subject residence and the claims of the creditors holding liens against said residence as well as the secured status of each such claimant.

8. 11 USC §506 provides, in relevant parts, "(a)(1) **An allowed claim** of a creditor secured by a lien on real property in which the estate has an interest…**is a secured claim to the extent of the value of such creditor's interest in the estate's interest in** such **property,…and is an unsecured claim to the extent that the value of such creditor's interest…is less than the amount of such allowed claim.**", "**Such value shall be determined in light of** the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on **a plan affecting such creditor's interest.**"  and "(d) **To the extent that a lien secures a claim** against the debtor **that is not an allowed secured claim, such lien is void**, unless …(describing two exceptions not applicable herein)."  (emphasis added)

As shown by the Declaration of Joint Debtor filed herewith and the appraisal and other exhibits thereto the value of Debtors' residence as of the 12/21/09 Petition date herein was $262,000 at most, the amount due to the holder of the 1st TD lien of Everhome Mortgage as of such date was at least $369,000 and the amount due for real estate taxes secured by said residence as of such date was t least $1,565.  As also shown by said Declaration, the lien held by claimant Everhome was granted and recorded with the San Diego County Recorder on or about 6/1/05 and the subject lien held by claimant CTI/Vericrest Financial, Inc. was granted and recorded with said Recorder on or about 3/15/06, giving the Everhome lien priority over the CIT/Vericrest lien.  Given these facts it is clear that the subject lien of CIT/Vericrest Financial, Inc., ostensibly secured by a 2nd trust deed against Debtors' residence, is totally unsecured pursuant to 11 USC §506(a).

9. 11 USC §1322(b) provides, in relevant part, that a Chapter 13 Plan may "(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or the holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;…".

10. Applicable bankruptcy law provides that if the Court determines that a creditor

4

ostensibly secured by a debtor's primary residence is in fact totally unsecured because the estate's interest in such residence is less than the total of the senior liens secured by such property the Court may modify the interests of such creditor despite the language of 11 USC §1322(b) and, if applicable, such creditor shall be treated as an unsecured creditor for Chapter 13 Plan purposes. Please see In Re Zimmer (2002) (9th Cir.) 313 F.3d 1220 at 1222-1227, In Re Geyer (1996) 203 B.R. 726 at 729 and In re Millspaugh (2003) 302 B.R. 90 at 96. In this case, however, due to the discharge of the "in personam" or debt portion of CIT/Vericrest's subject claim in Debtors' chapter 7 proceeding, claimant CIT/Vericrest no longer has either an in personam claim or an unsecured claim in this proceeding and therefore will not be treated as an unsecured creditor in Debtors' Chapter 13 Plan herein. The effect of the discharge in debtor's prior Chapter 7 was to eliminate the in personam portion of CIT/Vericrest's claim. The effect of any requested lien strip pursuant to this motion will be to eliminate the in rem portion of CIT/Vericrest's claim.

It must be remembered that the wording of 11 USC §506(a) does not **create** any claim which did not exist prior to the determination of value of the ostensible security for such claim. Rather, §506(a) refers to "an allowed claim" and presumes that a valid allowable claim exists and that §506(a) will merely be used to determine how much (if any) of such claim would be deemed "secured" (in rem secured lien) and how much "unsecured' (in personam debt) for bankruptcy purposes. In cases such as this where the subject creditor holds no in personam claim due to the prior Chapter 7 discharge thereof and holds only an ostensible claim against real property in the form of an in rem secured lien claim against such real property such creditor is left with no allowable claim at all if such lien is stripped from the property. Although Debtor's counsel would normally not refer to an unpublished decision Debtor does request that this Court take judicial notice of the "Written Decision – Not For Publication" entered by Judge Taylor in case #08-12177-PB13, In Re Julie Bollerud, on 6/1/09, particularly lines 12-24 of page 8 thereof concerning effect of a prior discharge of the in personam portion of a potential claim coupled with the determination that the in rem portion of such claim is valueless and therefore subject to being stripped off. A copy of such unpublished decision is attached

hereto as Exhibit A and incorporated herein by this reference.  Such case is not cited as binding authority on this Court but merely as a well-reasoned decision addressing the referenced issues.  The end result of such discharge coupled with any such lien strip in a case such as this case (and the Bollerud case as well) is that the claimant really has no allowable claim at all and is not entitled to be paid via the Chapter 13 plan.

11. In this case Debtors' have made it clear from their Schedule D and from their proposed Plan that they do not believe claimant CIT/Vericrest has an allowable claim (secured or unsecured) or entitled to any Plan payments in this proceeding.

12. In the event Debtors need to file an objection to CIT/Vericrest's filed claim they will do so.  It would seem, however,  that this Court should be in a position to determine that there is no allowable secured claim and no allowable unsecured claim as a result of this motion and to make an appropriate ruling which will obviate the need for any objection to claim procedure.

13. The above analysis relies upon USC §§506 and 1322 and the provisions of Debtor's plan to strip off the subject CIT/Vericrest lien.  An additional grounds exists, however, to strip such lien.  As noted above, 11 USC §506(d) provides, in relevant part, that **"To the extent that a lien secures a claim** against the debtor **that is not an allowed secured claim, such lien is void**, unless …(describing two exceptions not applicable herein)." (emphasis added).  Once this Court determines pursuant to 11 USC §506(a) and the facts herein that CIT/Vericrest's claim is not an allowable secured claim because it is wholly unsecured the Court should make findings and an order to the effect that any alleged CIT/Vericrest lien is void.  This, coupled with Debtors' discharge of the in personam debt portion of such claim in their prior chapter 7 will lead to almost the same result as using the above-described §506(a), §1322, Plan provisions and case law thereunder with one important difference.  Such difference is that when a lien is stripped pursuant to §506(a), §1322, and Plan provisions 11 USC §1328 provides that if the debtor's case is dismissed due, for example, to debtor's failure to complete his payments under his confirmed Chapter 13 Plan the subject lien will re-attach to the subject property upon case dismissal whereas when a lien is stripped pursuant to 11 USC §§506(a) and

506(b) such strip is effective immediately and does not re-attach to the subject property in the event Debtor's case is dismissed prior to his completion of his confirmed Plan..

The Court in In Re Fuller (2000) 255 BR 300 held, at page 306, that in the case of a totally unsecured lien claimant "It is the inevitable byproduct of the Section 506(a) valuation process. Rule 3012 permits a secured claim to be valued through general motion practice. Once the value of the secured claim is determined, the attendant lien is automatically 'stripped'. No further proceeding, either by motion or complaint, is required.".

Judge Adler of this Court ruled in In Re Geyer ((1996) 203 BR 726 at 729-730 as follows: This court holds that the term 'secured claim' as used in 1322(b)(2) has the same meaning as the term 'secured claim' in section 506(a). Unless there is some equity to which the creditor's lien attaches, there is no allowed secured claim and no entitlement to the protections against modification contained in section 1322(b)(2). **A chapter 13 debtor may 'strip off' a lien on his or her primary residence under the plan or under section 506(d) where the lienholder's interest is totally unsecured**". (emphasis added)

In this case Debtors request that once this Court determines that the claim of CIT/Vericrest is totally unsecured via §506(a) that it enter an order to the effect that said lien is stripped as of the date of such order and that such lien strip is not dependent upon Debtors completing their proposed Plan herein.

14. Debtors have met with our attorney herein, Bruce R. Babcock, and he has advised them of their rights and responsibilities concerning this case. On 1/16/10 Debtors and their attorney signed a U.S. Bankruptcy Court Southern District of California Rights And Responsibilities Of Chapter 13 Debtors And Their Attorney document and such was filed herein on 1/19/10. Such document provides for attorney's fees in the amount of $450 for the brings of a lien strip motion such as the subject motion herein. As noted in the Declaration of Joint Debtor filed herewith the Debtors have no objection to such an award of $450 in fees to their attorney for bringing this motion, to be paid as an administrative claim.

## CONCLUSION AND REQUEST

14.  In this case the Court should (1) determine that creditor CIT/Vericrest is wholly unsecured for purposes relevant to this motion and therefore has no allowable secured claim herein, (2) strip off and void the 2nd T.D. held by said Creditor against Debtor's residence pursuant to 11 USC §§506(a), 506(b) and all other applicable code provisions and case law and (3) determine that CIT/Vericrest has no unsecured claim herein due to the prior discharge thereof and that such creditor shall receive no payments via Debtors' Plan herein.  Debtors also request all other relief the Court finds appropriate.  Such is the primary relief requested by Debtor herein.

In the event the court is unable to grant such requested primary relief Debtors request that the Court (1) determine that creditor CIT/Vericrest is wholly unsecured for purposes relevant to this motion and therefore has no allowable secured claim herein, (2) strip off and void the 2nd T.D. held by said Creditor against Debtor's residence pursuant to 11 USC §506(a), 11 USC §1322, the provisions of Debtors' proposed chapter 13 Plan and all other applicable code provisions and case law and (3) determine that CIT/Vericrest has no unsecured claim herein due to the prior discharge thereof and that such creditor shall receive no payments via Debtors' Plan herein.

Debtors also request that their attorney herein be awarded $450 for bringing this motion, to be paid as an administrative claim, and for all other relief the Court finds appropriate.

Respectfully submitted,

DATED: 6/29/10

Bruce R. Babcock,
Attorney for Debtors

8

**WRITTEN DECISION - NOT FOR PUBLICATION**

ENTERED 6-2-09

FILED

JUN 1 2009

CLERK, U.S. BANKRUPTCY COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

In re:                                    ) BK. No. 08-12177-PB13
                                          )
Julie Bollerud,                           )
                                          ) MEMORANDUM DECISION
              Debtor.                     )
                                          )
                                          )
                                          )
                                          )
                                          )
                                          )

Julie Bollerud seeks an order valuing her residence and determining that the junior lien held by Old Republic Equity Credit, Inc. ("Creditor") is wholly unsecured and, thus, can be modified and stripped under her chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(2).[1] Prior to considering the merits of Ms. Bollerud's valuation and lien modification requests, the Court must determine whether Ms. Bollerud, who is not entitled to receive a chapter 13 discharge, may utilize the provisions of 11 U.S.C. § 1322(b)(2).

---

[1] Unless otherwise provided, all references herein to code sections shall mean the Bankruptcy Code ("Code"), codified in Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

1

EXHIBIT A

# FACTS

On September 22, 2006, Julie Bollerud ("Debtor") and her spouse filed chapter 13 case number 06-2787 (the "First Bankruptcy"). The Court dismissed the First Bankruptcy by order entered on December 18, 2007.

Thereafter, on March 2, 2008, Debtor and her spouse filed chapter 7 case number 08-1753 (the "Second Bankruptcy"). In the Second Bankruptcy Debtor's Schedules:

      a.    valued her residence at $420,000.00;

      b.    scheduled the claim of Wachovia secured by the first trust deed (the "Wachovia Claim") at $418,334.00;

      c.    scheduled real property taxes at $2,800.00; and

      d.    scheduled Creditor as wholly unsecured with a claim of $80,790.00.

In the Second Bankruptcy, Debtor's Form B-22 showed zero available monthly disposable income at line 50. Similarly, in the Second Bankruptcy her Schedule J showed expenses in excess of income. A comparison of her Schedule J and Form B-22 indicates that even if Debtor excluded payment on her second trust deed in her Schedule J calculation of home mortgage payment it would likely not have resulted in any payment to unsecured creditors.

The Debtor and her spouse successfully fulfilled their obligations as debtors in the Second Bankruptcy and, as a result, received a discharge on June 10, 2008. The total of

scheduled unsecured debt discharged in the Second Bankruptcy, including deficiency claims on account of secured debt, was less than $165,000.00.

On November 26, 2008, Debtor filed the current chapter 13 case (the "Third Bankruptcy").  In the Third Bankruptcy Debtor's schedules:

        a.     valued her residence at the time of filing at $376,326.00;

        b.     scheduled the Wachovia Claim at $523,101.00; and

        c.     again scheduled Creditor as wholly unsecured with a claim in the amount of $80,799.00.

On January 5, 2009, the chapter 13 Trustee filed a motion under section 1328(f)(1) requesting an order determining that the Debtor was not entitled to a discharge as a result of her discharge in the Second Bankruptcy.  The Debtor did not oppose this motion, and an order thereon was entered on January 27, 2009 (the "Section 1328(f) Order").

Debtor filed her chapter 13 plan (the "Plan") on November 26, 2008.  Paragraph 19 of the Plan advises that Debtor intends to "strip" the lien held by Creditor.  Consistent therewith, the Debtor filed her Motion to:  (1) Determine Value of Real Property; (2) Avoid Trust Deed Lien, etc. (the "Lien Strip Motion") on January 31, 2009.  The Plan also provides for payment over time of substantial arrearage on the Wachovia Claim.

Creditor did not object to the Plan and did not file any opposition to the Lien Strip Motion.

3

1  The Chapter 13 Trustee, however, filed documents arguing that a debtor must be

2  entitled to a discharge in order to utilize section 1322(b)(2) to strip a lien.

3

4  **DISCUSSION**

5

6  11 U.S.C. § 1322(b)(2) provides that a chapter 13 plan may: "modify the rights of

7  holders of secured claims, **other than a claim secured only by a security interest in real**

8  **property that is the debtor's principal residence, . . .."** (emphasis added).  In this case

9  there is no dispute that Creditor holds a second trust deed against Debtor's principal

10 residence.

11

12 Notwithstanding, a chapter 13 plan may utilize section 1322(b)(2) to modify and

13 "strip" a junior lien from a principal residence where the Court, pursuant to a value

14 determination under section 506(a), determines that the value of the residence is less than

15 the amount owed to senior lienholders, and that the junior creditor's lien, thus, is wholly

16 unsecured. *See, Zimmer v. PSB Lending Corp. (In re Zimmer)*, 313 F.3d 1220 (9th Cir.

17 2002); *Lam v. Investors Thrift (In re Lam)*, 211 B.R. 36 (9th Cir. BAP 1997).  In this case,

18 the undisputed evidence establishes that Creditor is a wholly unsecured creditor.

19

20 **1.    Debtor Is Entitled To File Her Chapter 13 Case And To Confirm A**

21 **Chapter 13 Plan.**

22

23 Debtor's receipt of a discharge in the Second Bankruptcy precludes any discharge in

24 this case.  11 U.S.C. § 1328(f).  Debtor, acknowledging this fact, acquiesced to the entry of

25 the Section 1328(f) Order.  The Debtor's inability to obtain a discharge, however, does not

26 bar the filing of her chapter 13 case.  *See, Johnson v. Home St. Bank,* 501 U.S. 78, 87

27 (1991); *In re Bateman*, 515 F.3d 272, 281 (4th Cir. 2008).  And the prior discharge of

28 Debtor's personal liability to Creditor does not limit Debtor's ability to include the Creditor's

4

*in rem* claim in her chapter 13 Plan. *Johnson*, 501 U.S. at 81-87. Thus, in cases involving prior discharge, a chapter 13 plan may be confirmed if it otherwise meets the confirmation requirements of section 1325. *Johnson*, 501 U.S. at 87-88; *In re Sanders*, 368 B.R. 634, 640 (Bankr. E.D. Mich. 2007).

**2.    Section 1322 Allows A Lien Strip In This Case And Does Not Expressly Require A Discharge.**

Section 1322 sets forth provisions that a chapter 13 plan must include as well as those that it may include. Section 1322 does not state that a discharge is required in order to obtain the benefits of its permissive provisions, including the ability to modify an obligation under section 1322(b)(2).

Other provisions of the Code make clear that a section 1322(b)(2) modification is subject to set aside where a chapter 13 plan is not completed. *See*, 11 U.S.C. § 348(f)(1)(C) (lien avoidance set aside upon conversion) and 11 U.S.C. § 349(b)(3) (property of the estate revested as of case commencement upon dismissal.) Neither section 348 nor 349 apply, however, when a plan is completed and a case closes and concludes without a discharge. Further, there is no provision analogous to these sections that reinstates modified liens if a discharge is not available. Thus, the Court can find no express Code provision supporting the assertion that a section 1322(b)(2) modification does not survive plan completion and case closure notwithstanding the absence of a discharge. Having so concluded, however, the Court must still determine whether a plan containing a lien strip in a non-discharge case is confirmable.

5

3.      **Section 1325 Sets Forth The Standards That A Chapter 13 Plan Must Meet And Does Not Require Discharge Prior To A Lien Strip In This Case.**

Section 1325 provides that the Court shall confirm a chapter 13 plan if it complies with the requirements set forth therein.  Thus, the Court must review each provision of section 1325 to determine whether a debtor's plan is capable of confirmation.  This analysis may be especially crucial in a non-discharge case, and so the Court carefully fulfills its independent obligation to make this inquiry.  *See, Johnson,* 501 U.S. at 87-88 (protection is provided in no discharge case as confirmation possible only if plan meets relevant section 1325 requirements).

In this case, the only argument that the Plan is non-confirmable arises from its inclusion of a 1322(b)(2) lien strip provision where a discharge is not available.  While section 1325 has numerous requirements, not all are directly applicable to this analysis.  As a result, the Court limits its review to the sections listed below where the Court concludes that analysis directly relevant to the lien strip issues is appropriate.

a.      **Section 1325(a)(5) – If Applicable – Does Not Bar Confirmation In This Case.**

Section 1325(a)(5), expressly refers to discharge, and provides as follows:

[W]ith respect to each allowed secured claim provided for by the plan –
(A) the holder of such claim has accepted the plan;
(B)(i) the plan provides that –
      (I) the holder of such claim retain the lien securing such claim until the earlier of –
            (aa) the payment of the underlying debt determined under non-bankruptcy law; or
            (bb) discharge under section 1328; and

6

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; . . .

Thus, section 1325 suggests that when secured claims are considered the lienholder, notwithstanding anything set forth in section 1322, must retain the lien until the earlier of payment in full or discharge unless the lienholder accepts the plan or the debtor surrenders the property at issue.

In the absence of other order, liens on real property pass through bankruptcy unaffected by the Debtor's discharge. *See, Dewsnup v. Timm*, 502 U.S. 410, 418 (1992). As a result, notwithstanding the prior chapter 7 case discharge, Creditor retained its lien and the ability to foreclose thereon and to collect its claim to the extent possible from its collateral. However, Debtor's personal liability, *i.e.* Creditor's ability to compel the payment of any deficiency judgment, was extinguished. *See,* 11 U.S.C. § 524(a)(1) and (2); *Johnson*, 501 U.S. at 82-84. Thus, Creditor is arguably a secured creditor in that it continues to hold a lien.

Notwithstanding, section 1325(a)(5) fails to bar confirmation in this case for two reasons. First, the analysis in *Lam* and *Zimmer* raises issues. As Creditor is not a holder of a secured claim for section 1322(b)(2) lien strip purposes, one must question whether its claim can properly be considered a secured claim entitled to section 1325(a)(5) protection. Here, however, the Court need not resolve this issue as section 1325(a)(5), if applicable, does not bar confirmation in this case as section 1325(a)(5)(A) is satisfied. Creditor has not objected to the Plan or the Lien Strip Motion. Thus, consent can be inferred by this Court and section 1325(a)(5) deemed satisfied. *Andrews v. Coheit (In re Andrews)*, 49 F.3d 1404,

7

1409 (9th Cir. 1995) (where the holder of a secured claim fails to object this translates into acceptance of the plan.) Thus, section 1325(a)(5), if applicable, has been satisfied.

### b.    Section 1325(b) Is Satisfied.

Section 1325(b) is applicable where either a trustee or unsecured creditor objects to chapter 13 plan confirmation. It requires, in the alternative, that an unsecured claim receive a distribution equal to the amount of the claim or that a debtor devote all projected disposable income during the plan term to payments to unsecured creditors. Here, both requirements are met.

If the Court concludes that the claim at issue is not a secured claim for section 1325(a)(5) purposes, it is logical to assume that section 1325(b)(1)(A) applies. In this case, however, the claim is not a typical unsecured claim given the prior discharge. Indeed, the claim appears to be neither clearly secured for purposes of section 1325(a)(5) nor clearly unsecured for purposes of section 1325(b).[2] The exact categorization of the claim, or if this claim is entitled to either categorization given its "in rem" character, however, is not a consideration that bars confirmation. Section 1325(b), if applicable, provides that a creditor must be paid the full amount of its claim. Here, the Creditor holds only an *in rem* claim, the *in rem* claim is valueless, and, thus, no payment is required in order to satisfy section 1325(b)(1)(A).

Further, the Plan also is confirmable as it complies with section 1325(b)(1)(B). There is no dispute that Debtor lacks projected disposable income from which to pay unsecured creditors and that a zero percent Plan is confirmable in this case.

---

[2] Can a wholly unsecured *in rem* claim be neither a secured nor unsecured claim for section 1325 purposes? The Court finds it possible, and notes that if such is the case the only protection available to such a creditor falls outside of sections 1325(a)(5) and 1325(b).

8

c.    **Considerations Of Good Faith Do Not Bar Confirmation.**

In order for a plan to be confirmed it also must be proposed in good faith (*see,* 11 U.S.C. § 1325(a)(3)) and the case must be filed in good faith (*see,* 11 U.S.C. § 1325(a)(7)). Good faith is a flexible concept requiring a case by case determination. *Villanueva v. Dowell (In re Villanueva)*, 274 B.R. 836, 841 (9th Cir. BAP 2002). In this case, there was no evidence of bad faith. In reaching this determination, the Court focused on the following:

i.    *Creditor was wholly unsecured in both cases.* The evidence establishes that the Creditor was wholly unsecured on the date of the Second Bankruptcy. Debtor listed the value of her residence at that time as $420,000.00 and the amount owed on the Wachovia Claim and on account of property taxes exceeded this amount. Bad faith may be suggested where a debtor "rides the market" seeking a lien strip not available at the time of the prior filing, however, such a consideration does not arise in this case;

ii.    *Debtor did not use serial filings to discharge debt in amounts in excess of the limitations of section 109(e).* Bad faith may be found where the debtor would not qualify for chapter 13 relief at the time of its prior filing. The goal of the statutory limits on discharge of debt in 11 U.S.C. § 109(e) is to limit the amount of debt that can be discharged absent the protections set forth in chapter 11. H.R. Rep. No. 595, 95th Cong., 1st Sess. 320 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News, pp. 5963, 6277. In this case, the evidence indicates that the total amount of debt to be discharged in the Second Bankruptcy and the Third Bankruptcy, including unsecured deficiency debt, is still less than that allowed by section 109(e). Once again, bad faith is not suggested.

iii.    *Debtor did not use serial filings to avoid payment to unsecured creditors.* A review of the schedules in both cases indicates that a zero percent plan in a

9

1  chapter 13 case would have been appropriate if the Second Bankruptcy were filed as a

2  chapter 13 case. Simply put, no creditor would have received greater payment if Debtor

3  initially filed under chapter 13; and

5      iv. *Debtor has an appropriate need for the Third Bankruptcy other*

6  *than to achieve a lien strip.* Finally, and perhaps most importantly, this is not a case filed

7  solely for the purpose of lien stripping. The Debtor had at the time of the Second

8  Bankruptcy and has today significant unpaid arrearage in connection with the Wachovia

9  Claim. In the absence of a payment plan under a chapter 13 plan, the Debtor may lose her

10  home. The Court, thus, finds a highly appropriate reason for filing of the Third Bankruptcy

11  that is separate and distinct from the desired lien strip.

13    In short, based on this record, the Court can find no evidence of bad faith under the

14  facts of this case and, as a result, holds that sections 1325(a)(3) and (6) are not a bar to

15  confirmation.

17     **d.**  **Section 1325(a)(1) Is Not A Bar To Confirmation.**

19    Finally, the Court must consider section 1325(a)(1) which provides that a chapter 13

20  plan must otherwise comply with the Bankruptcy Code. The Bankruptcy Code contains no

21  provision expressly requiring discharge in connection with a section 1322(b)(2) lien strip.

22  Conversely, the Bankruptcy Code expressly provides for claim modification in

23  section 1322(b)(2). Thus, this Court cannot find, based on this record, that

24  section 1325(a)(1) bars confirmation of the Plan as no Code provision expressly prohibits a

25  lien strip where a discharge is not available.

10

1  **e.   Contrary Case Law On This Issue Is Distinguishable.**

2

3      Cases finding that discharge is required in connection with utilization of

4  section 1322(b)(2) rely on long-standing principals that a discharge is generally required in

5  order to terminate a lien, that liens ride through bankruptcy notwithstanding discharge, and

6  that liens modified under section 1322(b)(2) are unwound upon dismissal or conversion.  *In*

7  *re Jarvis*, 2008 Bankr. LEXIS * 13-14 (Bankr. C.D. Ill. 2007).  While this reasoning may

8  carry the day in a case where a creditor objects to the plan, it cannot be controlling in a

9  situation where a creditor fails to in any way oppose the proposed plan treatment.

10

11      In this case, the Plan with its lien strip proposal was properly served on Creditor.

12  Notwithstanding this fact, Creditor failed to oppose Plan confirmation.  Similarly, the Lien

13  Strip Motion referenced in the Plan and required to effectuate the Plan treatment was

14  properly served on Creditor.  Once again, Creditor failed to oppose.  A creditor who voices

15  no opposition is deemed to have consented to the plan.  *Andrews*, 49 F.3d at 1409.  Given

16  this deemed consent, given the absence of unequivocal Code provision barring this result,

17  and given Debtor's utilization of a Code provision not expressly requiring discharge, this

18  Court finds the analysis of *Jarvis* unpersuasive as applied to the facts of this case.[3]  The

19  Court agrees, however, that Plan completion must occur before reconveyance of the Trust

20  Deed.

21

22      Further, the analysis in *Jarvis* is not without answer.  In *In re Picht*, 396 B.R. 76

23  (Bankr. D. Kan. 2008), the bankruptcy court analyzed related issues and determined that

24  discharge was not required prior to a lien strip.  The *Picht* Court analyzed the availability of

25  _____

26  [3]  Similarly, a confirmed plan binds the creditor who received proper notice, but failed to object
even if it contains treatment contrary to the express terms of the Bankruptcy Code.  *See, Espinosa v.*

27  *United Student Aid Funds, Inc.*, 545 F.3d 1113 (9th Cir. 2008).  In this case, unlike *Espinosa*, the
Plan does not contain a provision that is clearly and expressly contrary to the clear language of the

28  Bankruptcy Code.  The Court need not determine what position it would take in the event that a
creditor does not consent to a plan.

11

1  a section 1322(b)(2) lien strip in a non-discharge case involving an undersecured claim.[4]

2  The involved bank alleged that sections 1325(a)(5) and 1328(f) barred the lien strip because

3  a discharge was unavailable.  The *Picht* Court found these arguments unavailing.  It noted

4  that section 1325(a)(5)(B) requires retention of lien until the underlying debt – as

5  determined under non-bankruptcy law – is paid in full or discharged under section 1328, but

6  also requires lien retention upon dismissal or conversion **without completion of the plan**.

7  *Id.* (emphasis added).  The *Picht* Court found it significant that plan completion – not

8  discharge – is the trigger.  The *Picht* decision, thus, supports the conclusion that where the

9  *in rem* creditor receives an appropriate payment – albeit zero as in this case – the lien strip is

10  final upon plan completion notwithstanding the unavailability of a discharge.  *Picht*,

11  396 B.R. at 81.  The Court finds the *Picht* analysis compelling, but stops short of finding

12  that it would carry the day in a case involving creditor opposition as opposed to deemed or

13  actual Creditor consent.

15  **4.      Debtor's Plan May Not Affect Creditor's *In Rem* Claim As To Any**

16  **Interest Of Her Husband As A Joint Tenant.**

18  There are some limitations on the Court's ruling.  In particular, the Court requires that

19  any lien strip order in this case must be limited to the *in rem* interest of the Debtor.  In this

20  case the Debtor either owns the property at issue free and clear (see proof of claim of

21  Wachovia and deed of trust attached thereto) or holds the property as a joint tenant with her

22  husband, See Schedule A.  In either case, it is both appropriate and possible to bifurcate the

23  effect of the lien strip.  The Debtor's order must be clear in this regard.

27  [4]  The *Picht* Court found that section 1322(b)(2) did not bar a lien strip on the Debtor's residence
because the loan was initially secured by personal property collateral in addition to the lien on the
28  residence.

12

1        **5.     Notice To Creditor At Plan Completion Is Appropriate.**

2

3        Similarly, while the Court will not require discharge, it will require that the Debtor

4    take steps to advise the Creditor that it is required to reconvey its Deed of Trust as a result

5    of Plan completion.  While the Plan appropriately will treat the Creditor's claim as wholly

6    unsecured, reconveyance is not appropriate until such time as the Debtor has completed all

7    Plan payments.  *See,* 11 U.S.C. §§ 348 and 349.  In a case involving discharge, the debtor's

8    "resultant" discharge after completion of payments signals to a creditor that reconveyance is

9    appropriate.  In this case, no such discharge will issue.  As a result, upon completion of

10   payments, the Debtor must make an *ex parte* request to this Court for an order requiring

11   reconveyance of the Deed of Trust at issue.  This order must then be served on the Creditor.

12   In this manner, the Court can be certain that Creditor is not subject to claims of contempt

13   where it had no opportunity to properly perform.

14

15       **6.     Having Concluded That An Inability To Obtain A Discharge Is Not A**

16   **Bar, The Court Will Grant The Lien Strip Motion.**

17

18       Debtor properly served the Lien Strip Motion and all related documents, serving the

19   Creditor at two addresses including that of its registered agent.  Notwithstanding proper

20   service, Creditor failed to timely respond and oppose.  The Motion provides clear and

21   appropriate notice that failure to oppose will result in valuation of the real property at issue

22   ("Property") at $340,000.00 and the loss of Creditor's lien as a result thereof.  The Motion is

23   supported by adequate evidence.

24

25       Thus, the Court will allow the Lien Strip Motion, value the Property at $340,000.00,

26   determine that Creditor's claim is entirely unsecured under 11 U.S.C. § 506(a) given the

27   value of Property and the amount of liens senior to Creditor's lien secured thereby, and,

28

13

1   accordingly, avoid Creditor's lien under 11 U.S.C. § 1322(b)(2) contingent on entry of a

2   confirmation order so providing and completion of Debtor's chapter 13 Plan.

3

4       The Court will allow fees in the presumptively reasonable amount of $450.00 plus

5   the associated costs, subject to proof. Debtor's counsel also may seek additional fees

6   through fee application as this case is "atypical" within the meaning of *In re Eliapo*, 468

7   F.3d 592 (9th Cir. 2006).

8

9                               **CONCLUSION**

10

11      Consistent with this Memorandum Decision, the Debtor is to submit an order on this

12  Lien Strip Motion within ten (10) days and to submit an order finalizing the confirmation

13  process promptly after entry of the same. Any fee application must be filed on or before

14  July 1, 2009.

15

16  DATED:    June 1, 2009

17                                          LAURA S. TAYLOR, JUDGE
                                            United States Bankruptcy Court

18

19

20

21

22

23

24

25

26

27

28

                                    14